Shannon OWEN Plaintiff

v.

## UNIVERSAL UNDERWRITERS INSURANCE COMPANY Defendant

### No. CIV.A.1:02 CV 186SR.

United States District Court, S.D. Mississippi, Southern Division.

March 19, 2003.

---

Herman Cox, Gulfport, for Plaintiff Counselor.

Douglas Bagwell, Gulfport, for Defendant Counselor.

### Memorandum Opinion

SENTER, Senior District Judge.

This diversity action centers on a question of Mississippi law: whether an automobile liability insurer may issue a policy that restricts uninsured motorist coverage to certain designated individuals, without violating Mississippi's statutory requirements concerning uninsured motorist coverage.

This case is before the Court on Defendant Universal Underwriters Insurance Company's (Universal) motion for summary judgment on the primary disputed issue of coverage and Universal's alternative motion for partial summary judgment on the issue of punitive damages. For the

reasons set out below, I find that the policy's limitation of uninsured · motorist coverage to certain designated individuals is inconsistent with the statutory definition of "insured" set out in Miss.Code Ann. § 83–11–103(b). The policy provision is therefore an invalid basis for the denial of uninsured motorist coverage to the plaintiff, who is within the statutory definition of "insured."

On the issue of coverage, Defendant's motion will be denied. Defendant's alternative motion for summary judgment on the issue of punitive damages will also be denied, without prejudice to Defendant's right to reassert its motion on a record that is more fully developed.

### Undisputed Facts

Plaintiff was injured on April 15, 1999, when the vehicle he was driving was struck from behind by Mr. William Seddon. At the time of his injury, Plaintiff was an employee of Pat Peck Nissan, Inc., and he was driving one of his employer's vehicles with his employer's permission. Pat Peck Nissan, Inc. is one of the named insureds on Universal's policy number 119481F (the policy), and the vehicle Plaintiff was driving was covered under the policy.

Universal's policy provides a number of different types of coverage, including automobile liability coverage and uninsured/underinsured motorist coverage of $100,000. Endorsement No. 092 of the policy (page 109 of the policy) provides:

"The **WHO IS AN INSURED** condition [of the printed policy] is replaced with the following:

**WHO IS AN INSURED**—With respect to this Coverage Part [Uninsured/Underinsured Motorist Coverage], the individual (and any **FAMILY MEMBER**) designated on the declarations as subject to this endorsement and any passengers in a **COVERED AUTO** driven by the designated individual."

The policy declarations (page 1–H of the policy) designate, under the coverage for uninsured motorists, six individuals. Plaintiff is not among the individuals designated.

After the April 15, 1999, accident, Mr. Seddon's insurer settled the plaintiff's claim by paying its $50,000 policy limits. Because Mr. Seddon's $50,000 liability limit is less than the $100,000 uninsured bodily injury coverage provided by the Universal policy, Mr. Seddon is, by statutory definition, an uninsured motorist. Miss. Code Ann. § 83–11–103(c)(iii). When Plaintiff called upon Universal, the uninsured motorist carrier for the vehicle he was driving, to waive its subrogation rights as part of the settlement with Mr. Seddon, Universal disclaimed any subrogation interest and denied coverage. Plaintiff filed this action seeking recovery under the uninsured motorist coverage of the Universal policy.

If the policy's limitation of uninsured motorist coverage to the six designated individuals were valid, Plaintiff would not be covered by the policy's uninsured motorist endorsement.

### Applicable Law

This is a diversity action controlled by Mississippi law. The statutory provisions governing uninsured motorist coverage in automobile liability policies issued in Mississippi are set out in Miss.Code Ann. §§ 83–11–101 to 83–11–111. These statutes require insurers to provide uninsured motorist coverage in the form prescribed by the statutes unless this coverage is rejected in writing by the named insured. The statutes permit the insured to reject property damage uninsured motorist coverage and retain bodily injury uninsured motorist coverage, but not vice versa. The statutes permit the insured to purchase

uninsured motorist coverage in any amount from the statutory minimum up to the limits of the policy's liability coverage. The statutes neither explicitly authorize nor explicitly prohibit a "partial rejection" or "partial waiver" of uninsured motorist bodily injury coverage by allowing issuance of a policy that limits coverage to certain named individuals. The statutes do, however, contain a definition of "insured" for purposes of uninsured motorist coverage. Miss.Code Ann. § 83–11–103(b):

"The term 'insured' shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term 'insured' given in this section shall apply only to the uninsured motorist portion of the policy."

The policy's definition of those who have the status of an "insured" under the uninsured motorist provisions of the policy, i.e. the policy definition entitled "WHO IS AN INSURED," is more restrictive than the statutory definition of an "insured." The policy definition excludes permissive users, both drivers and passengers, and their personal representatives from coverage while they are using a covered automobile. Although Universal characterizes this as a "partial waiver" or a "partial rejection" of uninsured motorist coverage, the effect of this provision is to substitute a definition of "insured" that is narrower than the definition required by Miss.Code Ann. § 83–11–103(b). The language of the statute is mandatory, not permissive. The statute specifically requires that uninsured motorist coverage be provided for those who come within the statutory definition of "insured."

■ Universal has cited several cases from other jurisdictions that have approved the restriction of uninsured motorist coverage to certain designated individuals. These cases were, however, decided under different uninsured motorist statutes, and these decisions are inconsistent with Mississippi's well-established policy of liberal construction of these statutes. Under Mississippi law, an automobile insurance policy may, by its terms, provide enhanced uninsured motorist coverage, i.e. uninsured motorist coverage greater than that required by statute, but it may not diminish the uninsured motorist coverage required by statute. *Guardianship of Lacy v. Allstate Insurance Company,* 649 So.2d 195 (Miss.1995) (en banc).

The manifest purpose of requiring insurers to provide uninsured motorist coverage is to protect those who are within the statutory definition of "insured" from the financial consequences of being injured through the fault of an uninsured motorist, and the statutes requiring this type of coverage are to be liberally construed to achieve that purpose. *Stevens v. U.S.F. & G.,* 345 So.2d 1041 (Miss.1977); *Parker v. Cotton Belt Ins. Co.,* 314 So.2d 342 (Miss. 1975). The Mississippi Supreme Court has consistently held that the language of Mississippi's uninsured motorist statutes must be construed liberally to provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage. *Aetna Cas. & Sur. Co. v. Williams,* 623 So.2d 1005 (Miss.1993); *Accord Harris v. Magee,* 573 So.2d 646 (Miss.1990).

■ I find that the provisions of the Universal policy that limit the policy's uninsured motorist coverage to certain named individuals are inconsistent with the statutory definition of "insured" set out in Miss.Code Ann. § 83–11–103(b).

The policy provisions concerning these named individuals are valid, if at all, only as an expansion of the statutory definition of "insured." Universal's motion for summary judgment on the issue of coverage will be denied.

### The Issue of Punitive Damages

█ Uninsured motorist coverage is a type of first party insurance. The relationship between the insurer and the insured arises by contract, and, under Mississippi law, one of the reciprocal legal duties between an insurer and its insured is that of good faith and fair dealings, a duty that exists in the performance of every contract under Mississippi law. *Cenac v. Murry,* 609 So.2d 1257 (Miss.1992); *Restatement (Second) of Contracts § 205.* An insurer's duty to its insured imposes an obligation to make a prompt, thorough, and reasonable investigation of the merits of claims made under the policy *Bankers Life & Cas. Co. v. Crenshaw,* 483 So.2d 254 (Miss.1985), aff'd 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). An insurer has a duty to honor the terms of its policy and the requirements of applicable statutes. *Eichenseer v. Reserve Life Ins. Co.,* 682 F.Supp. 1355 (N.D.Miss.1988), aff'd. 881 F.2d 1355 (5th Cir.1989), vacated by 499 U.S. 914, 111 S.Ct. 1298, 113 L.Ed.2d 233 (1991), aff'd. on remand 934 F.2d 1377 (5th Cir.1991). An insurer has a duty to follow the applicable law in interpreting the provisions of its policy. *Stewart v. Gulf Guar. Life Ins. Co.,* 2002 WL 1874826 (en banc). Beyond its duty of good faith to its insured, an insurer has an overriding duty to make reasonable efforts to assure itself that the policies it sells in Mississippi conform to the requirements of Mississippi law. *Richards v. Allstate Ins. Co.,* 693 F.2d 502 (5th Cir.1982).

█ Universal asserts that it sold this policy in reliance on the approval given to the "elective options form" by the Mississippi Commissioner of Insurance. In these circumstances, Universal contends, it cannot, as a matter of law, be guilty of bad faith under applicable Mississippi law.

According to the correspondence between Universal and the office of the Commissioner of Insurance, the "elective options form" attached to the Universal policy was not submitted for approval for use in Mississippi until September 17, 2002, and its use was not approved until December 6, 2002, effective January 1, 2003. The Universal policy incorporated the "elective options form" for coverage in calendar year 1999, and the form itself was signed in December, 1998. Thus it appears that Universal's use of the "elective options form" in this case occurred approximately four years before the use of the form was approved by the Commissioner of Insurance.

The Commissioner of Insurance is charged with the responsibility of reviewing proposed policy forms. Although the Commissioner's approval is required by law, the Commissioner has no authority to override the terms of Mississippi's uninsured motorist insurance statutes, and his approval of the terms of this policy cannot validate a provision that is inconsistent with the requirements of these statutes. *See American Federated Life Ins. Co. v. Dale,* 701 So.2d 809 (Miss.1997).

At this point, there is no evidence in the record that would support entry of summary judgment under F.R.Civ.P. 56 with respect to the issue of punitive damages. I am of the opinion that this issue should be decided on a more fully developed factual record.

As a permissive user of his employer's insured automobile, plaintiff is within the Miss.Code Ann. § 83–11–103(b) definition of an "insured," and he is therefore enti-

tled to uninsured motorist coverage under defendant's policy.

Accordingly, it is

**ORDERED**

That defendant's motion for summary judgment on the issue of uninsured motorist coverage is hereby **DENIED**;

That defendant's alternative motion for partial summary judgment on the issue of punitive damages is hereby **DENIED**, without prejudice to defendant's right to reassert its motion on a record that is more fully developed.